**Bobby Wayne PERRY, Philip Anthony Eddie, Ernest Cordell Jones, James A. Mathis, and Gary R. Hyder, Plaintiffs–Appellees,**

v.

**P\*I\*E NATIONWIDE, INC., Defendant–Appellant.**

No. 87–6321.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1988.

Decided April 10, 1989.

Rehearing and Rehearing En Banc Denied May 25, 1989.

Peter Reed Corbin (argued), Corbin & Dickinson, John E. Duvall, Jacksonville, Fla., Thomas M. Donnell, Jr., Stewart Estes & Donnell, Nashville, Tenn., for defendant-appellant.

R. Steven Waldron, R. Steven Waldron & Associates, Murfreesboro, Tenn., John D. Schwalb (argued), Brewer, Krause, & Brooks, Nashville, Tenn., for plaintiffs-appellees.

Before WELLFORD and NELSON, Circuit Judges, and McQUADE *, District Judge.

WELLFORD, Circuit Judge.

This case comes to us on appeal from the district court's denial of defendant P*I*E Nationwide, Inc.'s (P*I*E) motion to dismiss this action of five plaintiffs based on a common law claim of alleged fraudulent inducement in obtaining their participation in an employees' benefit plan. P*I*E's motion was based on the defense that the state law claims were preempted by reason of 29 U.S.C. § 1144(a), § 514(a) of ERISA. Plaintiffs sued defendant in the district court at Nashville based on diversity of citizenship because defendant was a Florida corporation qualified to do business in Tennessee. The complaint asserted that defendant wrongfully induced plaintiffs to participate in an employee stock investment plan (SIP). Plaintiffs also alleged that their participation was obtained through fraud, coercion, misrepresentation, promissory estoppel, lack of consideration, and breach of fiduciary duty. Plaintiffs requested rescission or damages. P*I*E sought to dismiss because the plan was an employee stock ownership plan (ESOP) as contemplated under § 407(d)(6) of ERISA, 29 U.S.C. § 1107(d)(6),[1] and the Internal Revenue Code, 26 U.S.C. § 4975(e)(7).

The factual background of this controversy is essentially undisputed. P*I*E is a long-distance motor carrier operating throughout the United States and in part of Canada. In the fall of 1985, when the SIP came into being, P*I*E had approximately 11,000 employees and maintained over 300 truck terminals. It had experienced over $90,000,000 in operating losses during 1984 and the first half of 1985. The company was, to say the least, in "dire economic straits." In an effort to improve its weak financial condition, P*I*E offered the SIP, which was "designed to enable employees to acquire stock ownership in the Company, and to provide employees who participated with the opportunity to accumulate capital for their future economic security." The SIP was "expressly subject" to ERISA.[2] Defendant issued a lengthy prospectus which was filed with the Securities and Exchange Commission. All eligible employees were given a fifteen-page plan outline which summarized the "material contained in [the aforesaid SIP] prospectus."[3] To participate in the SIP, an employee had to agree to accept an "irrevocable 15 percent reduction in wages or salary from the

---

* The Honorable Richard B. McQuade, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. This appeal primarily pertains to the preemption clause in 29 U.S.C. § 1144:

   Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

   29 U.S.C. § 1144(a).

2. This statement of facts is contained in the magistrate's report and in the briefs of both parties.

3. This outline or summary was "qualified in its entirety by reference to the detailed information contained in such prospectus."

start of the program through December 31, 1990." [4]

Plaintiffs were stationed at the Nashville P*I*E terminal, and all but one (Eddie) had more than ten years experience. Between September and November 1985, each signed an agreement to participate in the SIP, which contained the following provision:

> I understand and agree that participation in the Compensation Program means that my wages or salary (as now or hereafter in effect) will be reduced by 15 percent beginning on the date the Compensation Program becomes effective, continuing through December 31, 1990. I acknowledge receipt of a Prospectus relating to the offering of Ryder/P*I*E Common Stock under the Stock Investment Plan and the Compensation Program.
> I elect to participate in the Compensation Program and in the Stock Investment Plan of Ryder/P*I*E Nationwide, Inc. [5]

P*I*E was sold to Maxitron, Inc. on January 1, 1986, just a few months after plaintiffs elected to join the SIP. Approximately 85% of eligible employees had similarly elected to join the SIP, which became effective December 31, 1985. [6] "The wage reduction election could not be revoked or changed during participation," and was "intended to be irrevocable." [7] Plaintiffs claim that they were told by P*I*E representatives that the company would close because of its poor financial condition if employees did not participate in the SIP and that "[d]efendant corporation under no circumstances would be sold." [8] The SIP,

however, contained one provision indicating that no representations, beyond those in the prospectus itself, were authorized, and another provision referring to a possible sale of P*I*E stock. Plaintiffs concede that the SIP contained participation, funding, and vesting requirements "as provided in ERISA," and the district court found that the SIP qualified under ERISA. Plaintiffs did not seek to exhaust their administrative remedies under the SIP before bringing suit in the district court.

Defendant's motion to dismiss, based upon ERISA preemption, was referred to a magistrate, who recommended that it be denied. He concluded that the cause of action related to "the manner in which this defendant procured the plaintiffs' agreements to withhold money from their pay" rather than "to the administration of the ESOP," or to "benefits under the stock option plan." [9] He also stated that "§ 1144(a) does not apply to the common law causes of action to determine whether or not the plaintiffs were coerced by fraud or misrepresentation to join the benefit plan." [10]

The district court agreed with the magistrate's recommendation, and held that "[p]reemption by ERISA only applies once the benefit plan is in existence," and does not apply to alleged common law actions of fraud or misrepresentation "to get the plaintiffs to join the plan." [11] Judge Higgins also held that "Section 1132(a) is not applicable to this action," because it does not "deal with an administrator's or fiduciary's duties or breach of duties under the plan." [12]

4. Certain collective bargaining unit employees, however, might participate at a 5 percent reduction. This 15 percent–5 percent distinction is not challenged in the instant litigation.

5. Effective January 1, 1986, Ryder/P*I*E Nationwide, Inc. changed its name to P*I*E Nationwide, Inc.

6. The SIP provided that the plan was conditioned upon at least 70% of the company's 11,000 employees electing to participate.

7. These findings of the magistrate were not contested by either party.

8. Plaintiffs' affidavits indicated only that "upper-level management representatives told them

that the Company was not for sale" because of its bad financial condition.

9. Memorandum of the district court, Joint Appendix at 32.

10. Memorandum of the district court, Joint Appendix at 32.

11. Memorandum of the district court, Joint Appendix at 34.

12. Memorandum of the district court, Joint Appendix at 38–39.

It is clear that the Supreme Court has given ERISA a broad construction with respect to its preemptive effect on state law and state actions that "relate to" an employment benefit Plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Mackey v. Lanier Collection Agency & Service, Inc.*, — U.S. ——, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988); *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987) (observing that "the express pre-emption provisions of ERISA are deliberately expansive"). We have held, consistent with this interpretation, that "Congress used 'relate to' in its broadest sense." *Authier v. Ginsberg*, 757 F.2d 796, 800 (6th Cir.) (citing *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900), *cert. denied*, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985); *see also Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985) (stating that § 1144(a) is a section of "unparallelled breadth"), *aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986). Whether plaintiffs' cause of action for what amounts to a fraudulent procurement of their consent to participate in the SIP is sufficiently *related* to the plan itself, or whether the relation, if any, is "too tenuous, remote, or peripheral a matter to warrant a finding that the [action] 'relates to' the plan," is the question before us. *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

> ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. .... ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the preemption provision.

*Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed. 2d 402 (1981).

After discussing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985), the district court cited it as "finding that if an individual is neither a participant nor beneficiary then he does not fall within the sphere of ERISA."[13] Because the purported misconduct of P*I*E occurred before plaintiffs became participants or beneficiaries, and because they were not suing for benefits under the plan, the district court held that preemption did not apply. *Scott* concerned the employees' loss of severance and "prospective" benefits after Gulf sold the refinery to another company which agreed to continue the employment of former Gulf Oil employees. *Id.* at 1505. "The conduct giving rise to the claim was the negotiation of an employment contract which prevented the existence of an employee benefit plan." *Id.* The *Scott* court held that the plaintiffs' state law claims were not preempted because they did "not raise any issues concerning the matters regulated by ERISA." *Id.* "The issues raised by the claim," stated the court, "are not different than those that would be raised by a claim that Gulf had conspired with [the buyer] to accept ... lower wages, a claim that would clearly not be preempted by ERISA." *Id.* The court also indicated that the plaintiffs' claim for prospective benefits was closely analogous to the claim in *Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group, Inc.*, 721 F.2d 654 (9th Cir.1983), in which an employee brought an action alleging that his employer fraudulently induced him to waive his right to participate in a pension plan. The *Freeman* court held that plaintiff's action could not be maintained under ERISA because the plaintiff, having waived participation in the plan, was not a "participant or beneficiary" as required by statute. The court also held that because the damages sought by the plaintiff were not "benefits under a plan," they could not be awarded in an ERISA action.

The district court also cited *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), which observed that "[o]nce established, ERISA operates to protect an employee's interest in the welfare benefit program." The district court noted that P*I*E's asserted wrongful act occurred before the SIP was estab-

---

**13.** Memorandum of the district court, Joint Appendix at 40.

lished and thus, by inference, the language cited from *Blau* would make ERISA inapplicable.

A contrary decision was rendered in *Phillips v. Amoco Oil Co.,* 799 F.2d 1464 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). There, employees of Amoco asserted that their past employer, Amoco, and Norgas, which bought a portion of Amoco's business and assets, fraudulently prevented them from negotiating with Norgas, their new employer, concerning whether their years of service with Amoco would be credited when calculating retirement benefits under the ERISA plan. 799 F.2d at 1469. *Phillips* held that the common law fraud claim was preempted under ERISA, but expressly limited the holding to the facts of the case. *Id.* at 1470 n. 2. The basis of the holding was that the claim depended on "the existence of a duty to disclose, which necessarily depends on an interpretation of the fiduciary duties imposed by ERISA." *Id.* at 1470. The damages claimed, furthermore, stemmed from the loss of ERISA benefits, which were deemed to "relate to" the employee benefit plan in question. *Id.* The district court in the instant case did not mention *Phillips,* but neither did *Phillips* cite to the Ninth Circuit cases heretofore mentioned.

■ One of the theories relied upon by plaintiffs in the amended complaint is that the defendant, as their employer, breached its fiduciary duty. This claim of breach of fiduciary duty is clearly foreclosed by ERISA. *See Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900; *Phillips,* 799 F.2d at 1470; *Authier,* 757 F.2d at 802; *Ogden v. Michigan Bell Telephone Co.,* 571 F.Supp. 520, 523 (E.D.Mich.1983). Preemption applies to this particular claim because ERISA provides a specific remedy for breach of fiduciary duty with respect to establishment of an ERISA plan. *See* 29 U.S.C. §§ 1104, 1132(a). To this extent, therefore, we must overrule the decision of the district court.

■ We are also convinced that the claim based on lack of consideration for the SIP undertaking, including the plaintiffs' agreement to take a salary cut, is so inher-

ently and directly related to the SIP that it is preempted by ERISA. Claimed lack of consideration goes to the substance of the undertaking, which is an "area of exclusive federal concern." *Alessi,* 451 U.S. at 525, 101 S.Ct. at 1907. We therefore overrule the decision of the district court on this issue, and hold that plaintiffs' claim based on lack of consideration is preempted.

■ The more difficult claims relate to fraud, misrepresentation, coercion, and promissory estoppel with respect to obtaining plaintiffs' agreement to participate in the SIP and acceptance of an irrevocable pay cut. An earlier district court case, *Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388 (E.D.Cal.1981), held:

> [W]here the state law has only an indirect effect on the plan *and* where it is one of general application which pertains to an area of important state concern, the court should find there has been no preemption.

*Id.* at 391 (footnote omitted, emphasis in original). *See also Miller v. Lay Trucking Co.,* 606 F.Supp. 1326 (N.D.Ind.1985) (holding that plaintiff's common law action for fraudulent inducement was not preempted by ERISA because the fraud occurred prior to the time plaintiff entered the plan and because the fraud claim did not directly affect the regulation of the ERISA plan). It may well be argued that state common law actions based on fraud, coercion, and promissory estoppel do concern important state interests and have general application to state causes of action rather than to federal claims.

Another case involving issues similar to those present in this dispute—an employee stock ownership program coupled with a 15 percent wage reduction for employees of a financially troubled airline—is *Childers v. Northwest Airlines, Inc.,* 688 F.Supp. 1357 (D.Minn.1988). Certain employees in that case, who were denied further participation in the plan because of promotion, sued alleging fraud in the inducement and breach of contract. The court held:

> [T]he essence of their claim is that Republic breached its contract and fraudulently induced them to agree to wage

concessions by failing to adopt plan requirements that would ensure equal participation in the ESOPs by all Republic employees. Such claims are "related to" a plan regulated by ERISA in the "broad common-sense meaning," *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900, of that phrase, and are, therefore, preempted by ERISA. 688 F.Supp. at 1364.

The *Childers* court, unlike the district court in the instant case, rejected plaintiffs' argument that their claims were "founded on acts preliminary to the adoption and creation of the ESOPs and, therefore, do not have any connection or reference to any employee benefit plan." *Id.*

*Mid America Hotel Corp. v. Bernstein,* 664 F.Supp. 384 (N.D.Ill.1987), reached a result similar to *Childers* by finding a fraudulent inducement claim to be preempted because it was intertwined with a claim for breach of fiduciary duty. *Id.* at 386.

Preemption was also found in *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), a case involving employees' claims for tortious interference with a contract relating to an employee benefit plan. *Dependahl* held that preemption of state common law claims, such as tortious interference, applies when (1) Congress has indicated an intent to "occupy the field," and (2) Congress has provided a remedy for the alleged wrong. 653 F.2d at 1215. See, to this same effect, *Ogden v. Michigan Bell Telephone Co.,* 571 F.Supp. 520, 523 (E.D. Mich.1983).

Resolution of the second of these *Dependahl* standards depends upon an interpretation of 29 U.S.C. § 1132, the ERISA civil enforcement provision. Section 1132(a)(3) provides that a civil action may be brought

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce

any provisions of this subchapter or the terms of the plan.

Here, plaintiffs seek a rescission of the plan and restitution of the agreed wage reduction. Neither party has cited any case indicating that § 1132 provides a remedy of the type sought by the plaintiffs. Plaintiffs, unlike the complainants in some of the cases cited or discussed above, do not seek plan benefits or an increase in plan benefits; rather, they seek not to be bound as participants and thus to recoup their wage reductions. (*Childers* claimants, for example, sought claims for benefits under the ESOP, an ERISA plan, and disputed their elimination from participation).

It may be seen that there is respectable authority for positions taken by both parties in this case concerning preemption of state common law claims of fraud, misrepresentation, and promissory estoppel. This court has not previously ruled on this issue. We are disposed, however, toward the reasoning of *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed. 2d 384 (1981), that preemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted. Giving plaintiffs the benefit of some doubt in this respect, we are uncertain whether 29 U.S.C. § 1132 provides, under the circumstances of this case, an adequate remedy to redress the wrongs claimed, specifically, rescission and refund of wage reductions. We therefore AFFIRM the action of the district court in concluding there was no ERISA preemption, but only with respect to the fraud, misrepresentation, and promissory estoppel [14] claims.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

If the plaintiffs' claims of fraud, misrepresentation, and promissory estoppel have not been preempted under ERISA—and I agree with the court's resolution of that

---

**14.** We are not called upon to decide at this juncture the effect of the plan language that no

oral promises outside the plan or prospectus were to be binding.

close question—it does not seem to me that the remaining claims (breach of fiduciary duty and lack of consideration) can fairly be said to have been preempted either.

The source of the fiduciary duty to which the employer was alleged to have been subject is unrelated to the benefit plan. The amended complaint alleges simply that "a fiduciary duty to fairly, openly and honestly disclose pertinent and material facts" arose because the plaintiffs, as the defendant is claimed to have known, "were in an inherently unequal bargaining position with defendant," and the plaintiffs "had placed trust and confidence in Defendant to act fairly and in good faith toward Plaintiffs." The supposed fiduciary duty thus has nothing to do with the administration of the plan or the payment of benefits under it—and I cannot see that the alleged duty to make full disclosure is any more closely related to the plan than is the duty not to make affirmative misrepresentations. If the alleged violation of the latter duty is not covered by ERISA, I do not understand why the alleged violation of the former is.

Turning to the supposed lack of consideration, I have no doubt that the claim would have been preempted had the plaintiffs asserted that they failed to receive the shares of stock promised them under the plan. As I read the amended complaint, however, that is not what the plaintiffs are contending. The plaintiffs do not deny that they have been earning stock in the company on a daily basis, and the defendant's affidavit shows they have been; it is "uncontroverted," as the magistrate noted, that the plaintiffs have been credited with stock ownership consistent with their pledges. The lack of consideration claim makes no sense to me, but if the plaintiffs are not contending that they failed to receive the stock to which the benefit plan entitles them, I do not think the claim is covered by ERISA.

I would affirm the judgment of the district court on all counts.