Mercedes S. COLE, et al., Plaintiffs,

v.

HEALTH CARE CORPORATION, a Mutual Legal Reserve Company, a foreign corp., Stanwich Partners, Inc., a Delaware Corp., Charles Bradley, John Poole, Ronald Cantrell, Stanwich Insurance Agency, Inc., a Pennsylvania Corp., Defendants.

No. 91–76957.

United States District Court, E.D. Michigan, S.D.

Jan. 25, 1993.

Jules B. Olsman, Royal Oak, MI, for plaintiffs.

Keefe A. Brooks, Michael J. Barton, Detroit, MI, for defendants.

## OPINION AND ORDER GRANTING DEFENDANT HEALTH CARE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This cause comes before the Court on Defendant Health Care Corporation's motion for summary judgment. Plaintiffs filed a six count amended complaint alleging breach of contract, promissory estoppel, negligent misrepresentation, breach of fiduciary duty, fraud and RICO, and seeking relief under state law or ERISA (29 U.S.C. § 1001 et seq.).[1] Plaintiffs assert that Defendant Health Care Corporation is liable to them for unpaid medical bills covered under an employee welfare benefit plan in which Plaintiffs participated or were beneficiaries. Defendant argues no liability based on its limited role as the claim administrator of Plaintiffs' benefit plan. For the reasons stated in this opinion, Defendant's motion is granted.

### I. Background

Plaintiffs are retired employees of De-Vlieg Machine Company and filed this action individually and as representatives of a class of individuals who were eligible for health care retirement benefits from their former employer under an employer funded (self insured) employee welfare benefit plan (hereinafter "the plan"). Defendant Health Care Services, Inc. (hereinafter "Health Care") which also does business as Blue Cross/Blue Shield of Illinois, became the third party claims administrator for

---

**1.** Because the fraud and RICO claims are not asserted against Defendant Health Care Corp., they are not at issue here.

Plaintiffs' health care retirement benefits in July, 1989.

### A.

At the time Plaintiffs retired from De-Vlieg Machine Inc., they were participants in an employee welfare benefit plan.[2] The plan was funded primarily with company assets and provided Plaintiff retirees with health care benefits. Travelers Insurance Company acted as the claims administrator for the plan. In 1987, DeVlieg Machine was sold to a group of investors known as Stanwich Partners, Inc. and became part of DeVlieg–Sundstrand, Inc. now known as DeVlieg, Inc.[3] As part of the transaction, DeVlieg agreed to maintain the plan for the benefit of both retirees and employees.

In July 1988, DeVlieg entered into a contract with Health Care Service Corporation (the Administrative Services Agreement, hereinafter "ASA") under which Health Care expressly agreed to act as the claim administrator for DeVlieg's plan with respect to current employees.[4] In July, 1989, Health Care replaced Travelers as claims administrator for the health care retirement benefits available to retirees.[5]

In consideration for services provided by Health Care, DeVlieg was to pay a monthly service charge in addition to minimum monthly advance payments sufficient to fund benefits provided by the plan. (ASA §§ IV–V). When claim settlements made by Health Care to fund plan benefits exceeded the minimum monthly advance payments, Health Care would notify DeVlieg of the shortfall and DeVlieg was responsible for paying the difference to Health Care within ten days. (ASA § VI). Health Care was under no obligation to pay claims for plan benefits if DeVlieg failed to make required minimum monthly advance or settlement payments or otherwise failed to satisfy its funding obligations under the plan. (ASA § VIII.F). Moreover, Health Care had the right to terminate the ASA ten days after giving written notice to DeVlieg of its failure to make payments required by the agreement or to otherwise fund benefits available under DeVlieg's plan. (ASA § VIII.A).

Both the plan and the ASA obligated DeVlieg to notify all persons covered by the plan should it be terminated. (Plan Art. III, para. 3.4(d); ASA § VIII.E).[6]

---

**2.** It is undisputed that the Plan was governed by and subject to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.*

**3.** DeVlieg, Inc. is in Chapter 11 bankruptcy and will probably be liquidated. (Defendant's brief at 2, n. 1). According to Defendant's brief, Discovery has revealed that the profitable assets of what was once the business of De-Vlieg–Sundstrand, Inc., were spun out into a separate entity now known as DeVlieg Bullard, Inc., in late March or early April, 1990. This left what is now known as simply De-Vlieg, Inc., as but a shell of its former self. It had/has no significant assets and is enveloped by substantial liabilities which greatly exceed listed assets to current employees and retirees, vendors and others who are now parties to the bankruptcy proceeding. (Defendants' brief at 9–10, n. 8).

**4.** Both the ASA and DeVlieg's official plan explicitly identified Health Care as the claim administrator. ASA §§ I–III; plan Art. II, para. 10.

**5.** DeVlieg sent the retirees a letter regarding the change which read in part:
We wish to advise you of some changes in your health care. First, we are changing in-

surance companies, effective July 1, 1989. Coverage will be provided through Blue Cross/Blue Shield of Illinois and the benefits will be nearly identical to those currently provided by Travelers.

(Exhibit 1 attached to Plaintiffs' brief). Plaintiffs received Blue Cross Identification cards which included their name, social security number and DeVlieg's group identification number. (Exhibit 2 attached to Plaintiffs' brief).

Shortly after DeVlieg switched from Travelers to Blue Cross, Plaintiffs were told that due to the rising costs of health care insurance coverage, they would be required to pay a portion of their own "premiums", which they did. Plaintiffs made payments directly to DeVlieg believing that DeVlieg was forwarding the payments to Health Care. Plaintiffs complaint alleges that Defendants Stanwich Partners, Inc., John Poole, Charles Bradley and Ronald Cantrell (owners or officers of DeVlieg), in violation of ERISA, did not forward the payments. Those allegations are not at issue in this motion.

**6.** ASA § VIII.E states:
If the Claim Administrator terminates this Agreement for failure of the Employer to make payment or payments due the Claim Administrator and/or for failure to perform any other obligation, duty or act required by

Both documents provided that termination of the plan did not eliminate any obligations of DeVlieg to pay benefits to covered employees, including Plaintiffs, for services covered under the plan. (Plan Art. VII § 7.1; ASA §§ VIII.F, IX.B).

### B.

Throughout much of 1989 and during the first seven months of 1990, DeVlieg defaulted in its obligations under the ASA. It failed to timely remit required minimum monthly advance and settlement payments sufficient to reimburse Health Care for amounts it paid to settle benefit claims in excess of amounts contributed by DeVlieg to fund plan benefits. In early July, 1990, DeVlieg and Health Care entered into a supplement to the July, 1988 agreement whereby Health Care agreed to allow DeVlieg to make weekly payments in the amount of $100,000.00 between July 6, 1990 and September 1, 1990 in order to retire deficit amounts due to Health Care and to cover ongoing claims. Despite the supplemental agreement, the deficit amounts were never paid off.

On December 21, 1990, DeVlieg gave written notice to its employees and retirees of its continuing failure to comply with contractual obligations owed to Health Care.[7] The plan participants were told that, while they still had coverage, claim payments had been put on "hold".[8] Because DeVlieg was never able to pay all of the money owed to Health Care, Health Care terminated the ASA agreement on June 28, 1991 pursuant to its terms. In August, 1991, DeVlieg filed under Chapter XI of the bankruptcy code.

### C.

Initially, Plaintiffs filed a state court complaint in Oakland County Circuit Court alleging only state law claims for breach of contract, promissory estoppel and negligent misrepresentation based on Health Care's refusal to pay Plaintiffs' medical bills after DeVlieg ceased making payments to Health Care under the ASA. On December 18, 1991, Health Care removed the case to this Court on the basis of federal question jurisdiction (ERISA preemption). On November 2, 1992, Plaintiffs filed an amended complaint asserting relief under ERISA, 29 U.S.C. § 1132.

Plaintiffs claim that Health Care is liable to them under a breach of contract theory because they are third party beneficiaries to the ASA, and Health Care breached the ASA when it failed to reimburse Plaintiffs or their health care providers for treatment

this Agreement, the Employer agrees to notify all Covered Employees. The Employer and the Claim Administrator agree that the Employer will give such notice because the Employer maintains direct and ongoing communication with, and maintains current addresses for, all such Covered Employees. The Employer will indemnify and hold the Claim Administrator harmless from any and all claims, cost and expenses, including but not limited to, reasonable attorney's fees in connection with such default, arising from the Claim Administrator's termination of this Agreement or denial of Claims pursuant to this Agreement.

Article III § 3.4(d) of the Plan states:
Termination of the Plan automatically terminates all the coverages of all Covered Persons. It is the responsibility of the Employer to notify all Covered Persons of the termination of the Plan, but all coverages will automatically terminate as of the effective date of termination of the Plan regardless of whether such notice is given.

7. It is undisputed that Health Care never informed Plaintiffs that DeVlieg was delinquent with regard to ASA payments, nor did it tell DeVlieg to inform its employees that they were no longer covered.

8. The letter, dated December 21, 1990 states in part:

This letter is to update you on the status of Blue Cross Blue Shield health insurance.... As you know, the premium payments from DeVlieg–Sundstrand were unpaid and claims were put on hold. After significant negotiations, we reached repayment terms with Blue Cross Blue Shield and our first payment has now been made ...
What does this mean to you as an insured person? You have insurance. Based on our discussions with Blue Cross Blue Shield it is our understanding that they will accept your claims. Claims will be held for payment in the order in which they are received ...
Given the language of this letter, it appears that Plaintiffs became aware of DeVlieg's failure to pay "premiums" some time before the letter was mailed.

rendered. Plaintiffs also assert that Health Care is liable based on negligent misrepresentation because Plaintiffs were led to believe that they were insured through Blue Cross Blue Shield when in fact DeVlieg was self insured.[9] Finally, Plaintiffs assert that Health Care is estopped from refusing to pay because Health Care failed to notify them (or their providers) that DeVlieg was in default on its "premium" payments. Defendant asserts that Plaintiffs' state law claims are preempted by ERISA, and that Health Care has no ERISA liability because it is not a fiduciary under the statute.

## II. Standard for Summary Judgment

In considering a motion for summary judgment, the Court may grant the motion only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The court must view the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 269, 106 S.Ct. 2505, 2521, 91 L.Ed.2d 202 (1986).

■ However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. Also, where the nonmoving party must meet a higher burden of proof than usual, that party must meet the same bur-

den in resisting the motion for summary judgment. *Id.*

■ Summary judgment may even be granted where a defendant's state of mind is at issue. A plaintiff may not defeat a motion for summary judgment by merely asserting that a jury might disbelieve the defendant's denial of malice, for instance. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Id.* at 256, 106 S.Ct. at 2514. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue' for trial." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citing *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. ERISA Preemption

■ The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* (ERISA), comprehensively regulates employee pension and welfare plans. Its basic purpose is "to insure that employees who are covered by the terms of private pension plans receive benefits from those plans in accordance with their years of credited service with their employer, and to protect the interests of employees in medical plans and other fringe benefit programs providing benefits on the occurrence of various contingencies". Ronald J. Cooke, *ERISA Practice and Procedure* § 1.02 (1989) (hereinafter *Cooke* at ——).

Under § 1132(a)(1)(B) of ERISA, a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan". Because the "Supreme Court has held that Congress' intent

---

9. Specifically, Plaintiffs assert that through the issuance of the Blue Cross Blue Shield identification cards and letters sent to them by DeVlieg, they were lead to believe they were insured by Blue Cross Blue Shield rather than DeVlieg.

in enacting ERISA was to completely preempt the area of employee benefit plans and to make regulation of benefit plans solely a federal concern ... virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991), referring to *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (additional citations omitted). "It is not the label placed on the state law claim that determines whether it is preempted, but whether in essence such a claim is *for the recovery of an ERISA plan benefit.*" *Id.* (emphasis added).

Plaintiffs' complaint in this case alleges that Defendant is liable for unpaid medical bills covered under a benefit plan and sets forth three state common law theories of recovery; breach of contract, negligent misrepresentation and promissory estoppel. Plaintiffs concede that DeVlieg's plan was an ERISA employee benefit plan and that their claims are "related to" the plan. Not withstanding these concessions, Plaintiffs assert that their state law claims should not be preempted because, if this Court determines that Defendant is not an ERISA fiduciary, Plaintiffs will be left without a remedy. (Plaintiffs' brief at 12).

The only binding authority Plaintiffs' cite in support of their position is *Perry v. P\*I\*E\* Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989). The plaintiffs in *Perry* alleged "fraud, misrepresentation, coercion and promissory estoppel with respect to [the manner in which the defendant employer obtained] plaintiffs' agreement to participate in [an employee stock investment plan] and acceptance of an irrevocable pay

cut." *Id* at 161. The relief sought by plaintiffs in that case was rescission of the plan and restitution of the wage reduction. The Sixth Circuit, relying on *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) held that ERISA will preempt a state common law claim only where "(1) Congress has indicated an intent to 'occupy the field,' and (2) Congress has provided a remedy for the alleged wrong". *Perry* at 162. Because the court was not certain that § 1132 provided for rescission and restitution under the circumstances of that case, the court held that plaintiffs state law claims were not preempted.

*Perry* is distinguishable from the case at bar because the plaintiffs in *Perry* were not seeking recovery of an ERISA plan benefit. They were seeking to have the entire plan set aside, a result not clearly provided for by ERISA. In the instant case, Plaintiffs allege that they are entitled to payment of certain medical bills under the terms of DeVlieg's benefit plan-recovery clearly contemplated under § 1132.[10]

Plaintiffs erroneously contend that if this Court finds that Defendant Health Care is not an ERISA fiduciary Plaintiffs will be left without a remedy. While ERISA gives Plaintiffs' no remedy against Defendant Health Care (because Health Care is not liable under the written terms of DeVlieg's plan), Plaintiffs may have valid ERISA claims against other defendants pursuant to the plan. Plaintiffs' complaint contains allegations against Stanwich Partners, Stanwich Insurance Agency, and three indi-

---

**10.** To the extent that Plaintiffs state law theories can be construed to seek recovery under the written terms of the plan, they may be cognizable under § 1132. While this saves Plaintiffs' breach of contract claim from pre-emption (*See* Section V of this opinion), it does not save the promissory estoppel or negligent misrepresentation claims. *See Cooke* at § 8.08.

Plaintiffs promissory estoppel claim "seeks to vary the written terms of the plan" by asserting a right to recover based on Defendant's representations to providers. "Use of estoppel principles to effect a modification of a written em-

ployee benefit plan would conflict with 'ERISA's emphatic preference for written agreements'". *Coleman* at 58. Plaintiffs' negligent misrepresentation claim alleges that Defendant misled them into believing that they were insured by Blue Cross rather than DeVlieg. Because that claim does not "assert rights under the plan", it cannot be brought under § 1132. Moreover, under 29 U.S.C.A. §§ 1021, 1022 and 1024, DeVlieg, as the plan administrator had a duty to inform participants and beneficiaries of the plan's terms. Plaintiffs cannot maintain a cause of action against Defendant Health Care for breach of a duty ERISA does not place on them.

viduals.[11] For the foregoing reasons, this Court finds that Plaintiffs' state law claims against Defendant Health Care Corporation are preempted by ERISA.

## IV. Fiduciary Duties under ERISA

■ Plaintiffs' complaint asserts three state law causes of action against Defendant (breach of contract, promissory estoppel and negligent misrepresentation) and asserts relief under state law and § 1132 of ERISA. While the complaint does not contain a breach of fiduciary duty count against Defendant Health Care, it is the primary issue briefed by the parties. Because a breach of fiduciary duty claim may be brought pursuant to § 1132, the Court (for purposes of this motion) will treat Plaintiffs' complaint as stating a breach of fiduciary duty claim against Health Care. *Flacche v. Sun Life Assur. Co.*, 958 F.2d 730, 733 (6th Cir.1992). According to Plaintiffs, Health Care was an ERISA fiduciary and breached its duty by failing to notify Plaintiffs or their health care providers that DeVlieg had not made the required minimum monthly advance payments and settlements under the ASA.

■ In order to find that a fiduciary duty has been violated, it must first be established that Defendant was a fiduciary as defined by ERISA. Under 29 U.S.C.A. § 1002(21)(A):

[A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advise for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....

(Emphasis added). It is well established that under ERISA, a person "may be a fiduciary for some purposes and not others". *Leigh v. Engle,* 727 F.2d 113, 133

(7th Cir.1984). As explained by the Fourth Circuit in *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54 (4th Cir.1992):

[T]he inclusion of the phrase "to the extent" in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition. The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue.

*Coleman* at 61 (and cases cited therein). *See also Tregoning v. American Community Mutual Insurance Co.,* 815 F.Supp. 1054 (W.D.Mich.1992).

*Coleman* sets forth a two tiered analysis for determining when a person is a fiduciary with respect to a particular function. First, the Court should determine the allocation of discretionary authority and responsibility as set forth in the ERISA plan documents. If no discretionary authority or responsibility as to the function is found in the plan itself, the Court should look beyond the documents to see if Defendants actually exercised such discretion. "If neither level of review discloses evidence demonstrating that a person possessed or exercised discretionary authority or responsibility with respect to the function at issue, he is not an ERISA fiduciary for that function" *Tregoning* at 11 relying on *Coleman.*

In this case, the Court must determine whether Health Care "possessed discretionary authority or responsibility" to notify Plaintiffs of DeVlieg's failure to pay amounts due under the ASA where failure to pay affects the availability of benefits to Plaintiffs.

It is undisputed that Health Care is not a named fiduciary with respect to the Plan. Under both the plan and the ASA, Health Care is the "claim administrator" for DeVlieg. (Plan Art. II para. 10; ASA §§ I–III). The ASA expressly sets forth the duties of the claim administrator (ASA Exhibit II) and states that its responsibilities are limited to those of a contract claim administrator rendering advice to and ad-

**11.** Presumably, Plaintiffs have claims in the DeVlieg bankruptcy matter as well.

ministering claims on behalf of DeVlieg's "plan administrator". (ASA III.A, III.B., XVI.C).[12]

While Health Care reserved the right to terminate benefit payments or coverage for failure to pay amounts owed under the ASA, nothing in the plan documents or the ASA gave it the authority or duty to notify participants of DeVlieg's failure to pay or to inform participants that coverage was in jeopardy. In fact, to the extent that the duty to notify plan participants of changes in the plan is allocated in the plan documents, the duty was expressly placed on DeVlieg. (Plan Art. III. para 3.4(d); ASA §§ VIII.E).

Finding no authority in the plan documents or the ASA itself allowing the Court to find Health Care a fiduciary with respect to the notification issue, the Court must look to whether Health Care "in fact exercised authority over these sorts of notifications". *Coleman* at 61. Nothing in the record indicates that Defendant voluntarily took responsibility for such notification.

It is undisputed that until June 28, 1991, when Health Care terminated the ASA, it continued to give routine pre-certification to Plaintiffs' health care providers representing that Plaintiffs were covered under a medical plan through Blue Cross and Blue Shield. Plaintiffs seem to argue that in responding to these inquiries, Defendant had a duty (or assumed a duty), independent of the plan documents or the ASA, to

notify Plaintiffs or their providers of DeVlieg's default and the possible future cancellation of coverage. This assertion is without merit.

The representations made by Defendant to Plaintiffs and their health care providers were true when made because until the ASA was cancelled, DeVlieg retained the right to pay amounts owed under the ASA thus allowing Plaintiffs claims to be paid. Health Care had no way of knowing when or whether DeVlieg would cure the default.[13] Moreover, it appears that the "pre-certification" obtained by Plaintiffs or their providers indicated only that DeVlieg's health care insurance was still valid and that its plan covered the procedure in question. No where does the record indicate that Health Care guaranteed payment of specific claims.

For the foregoing reasons, this Court cannot conclude that Defendant Health Care Corporation is an ERISA fiduciary with respect to notifying Plaintiffs' or their health care providers of DeVlieg's delinquent status under the ASA or that it breached a fiduciary duty.

### V. Breach of Contract under ERISA § 1132

■ "In order to maintain an action under [§ 1132], a plaintiff must be seeking to assert rights 'under the terms of his plan'. The employee benefit plan itself must be the basis of such an action." *Ogden v.*

---

**12.** Plaintiffs have occasionally blurred the distinction between the plan administrator and the claim administrator. In their first brief to this Court, Plaintiffs attempted to argue that the plan administrator, by its very nature, is a fiduciary for all purposes and that Health Care was in fact DeVlieg's plan administrator notwithstanding its contractual designation as claim administrator. (Plaintiffs' brief at 8). However, the plan clearly distinguishes the claim administrator from the plan administrator:

'Claim Administrator' means Health Care Services Corporation, a Mutual Legal Reserve Company (Blue Cross and Blue Shield of Illinois) which has been retained by the Employer to administer Claims under the Plan.

. . . .

'Plan Administrator' means the person, persons or entity named by the Employer in the Adoption Agreement to administer the Plan. *The Claim Administrator may not serve as the Plan Administrator.*

(Plan Art. II(10), (58), emphasis added).

In their supplemental brief to this Court, Plaintiffs admit that "Defendant ... was contracted to provide advice to the plan administrator", thus implicitly abandoning their prior argument. (Plaintiffs' supplemental brief at 10). Note that under the terms of the ASA, DeVlieg retained full and final authority and responsibility for the plan and its operation and Health Care was empowered to act only as expressly stated in the Agreement or as mutually agreed to in writing by the parties. (ASA § III.A).

**13.** Plaintiffs cannot claim that they had no knowledge of problems between DeVlieg and Defendants. The letter written by DeVlieg to Plaintiffs on December 21, 1990 states: *"As you know,* the premium payments from DeVlieg–Sundstrand were unpaid and claims were put on hold". (Emphasis added).

*Michigan Bell Telephone Co.*, 595 F.Supp. 961, 966 (E.D.Mich.1984); *See* note 10 of this opinion. Plaintiffs allege that Defendants are liable to them or their health care providers for unpaid medical bills covered under the plan because Plaintiffs' were third party beneficiaries to the ASA and Defendant was obligated to pay the bills pursuant to the ASA.

As Defendant points out in its brief, the undisputed facts indicate that the ASA is expressly binding only on DeVlieg and Health Care. (ASA § X.B). Moreover, even if Plaintiffs were third party beneficiaries to the ASA, Plaintiffs were bound by its terms. Those terms make it clear that Health Care was a third party claim administrator of DeVlieg's self funded plan (ASA § I–III); that Health Care was not and insurer nor did it underwrite DeVlieg's liability under the plan (ASA § I.E); that Health Care assumed no obligation to pay benefit claims except from funds contributed by DeVlieg (ASA § I.E); that in the event of default by DeVlieg under the ASA, Health Care had no obligation to make further claim payments for Plaintiffs benefit until the default was cured (ASA § VIII.F); and that any obligation to provide notice to employees or retirees regarding DeVlieg's failure to pay under the ASA rested with DeVlieg (ASA § VIII).

Because Plaintiffs are not third party beneficiaries to the ASA and if they were, cannot establish that Health Care had a duty to pay Plaintiffs' claims under the agreement, Plaintiffs' § 1132 claim fails.

### Conclusion

For the reasons stated in this opinion, the Court hereby GRANTS Defendant Health Care Corporation's motion for summary judgment.