56 F.3d 72
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Marvin A. MCNATT, Plaintiff-Appellant,
v.
ALLIED-SIGNAL, INC., Richard A. Graser, and James A.
Greenslade, Defendants-Appellees.
 No. 93-56381.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 3, 1995.
Decided May 16, 1995.
 
 MEMORANDUM**
 Before: McKAY,* REINHARDT, and FERNANDEZ, Circuit Judges.
 
 
 1
 Marvin McNatt appeals the district court's grant of summary judgment in favor of his former employer Allied-Signal, Inc. ("Allied") and his former supervisors Richard Graser and James Greenslade. McNatt alleges numerous violations of California law arising from his employment with and termination by Allied. The district court concluded that it had jurisdiction over this action and granted summary judgment to the defendants. We affirm on all counts except the one that relates to the alleged breach of the F20 sales commission contract (count four). McNatt has raised a triable issue of material fact with respect to that claim but no others.
 
 I.
 
 2
 On August 1, 1989, McNatt filed a complaint in California Superior Court, asserting the following violations of state law: (1) breach of condition to discharge only for cause; (2) tortious breach in violation of public policy; (3) breach of covenant of good faith and fair dealing; (4) breach of sales commission contract; (5) common counts; (6) breach of contract for permanent employment; (7) negligence; (8) fraud - concealment; (9) fraud - misrepresentation; (10) fraud - false promise; (11) trespass; (12) trespass on the case; (13) defamation; (14) intentional infliction of emotional distress; (15) negligent infliction of emotional distress; (16) interference with a contractual relation; and (17) conspiracy to interfere with a contractual relation. The defendants filed a notice of removal on May 22, 1990. Based on the pleadings and accompanying affidavits, the district court determined that diversity of citizenship existed and, therefore, that removal was proper. The court subsequently granted summary judgment to the defendants on all counts.
 
 
 3
 In a memorandum disposition issued August 11, 1992, a panel of this court reversed on the ground that the record did not establish the existence of diversity with respect to Defendant Graser. The panel remanded with instructions that the district court take additional evidence on the question of diversity.
 
 
 4
 When the defendants failed to introduce any additional evidence showing diversity of citizenship, McNatt moved to remand. In an order dated July 13, 1993, the district court denied McNatt's motion. The court concluded that, regardless of whether diversity of citizenship existed, it had jurisdiction because McNatt's fraudulent concealment claim (count eight) was preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001 et seq. After further briefing, the court again granted summary judgment in the defendants' favor on this count. McNatt timely appealed to this court.
 
 II.
 
 5
 On appeal, McNatt contends that removal of this action was improper. Removal is a question of federal subject-matter jurisdiction reviewed de novo. Gould v. Mutual Life Ins. Co., 790 F.2d 769, 771 (9th Cir.), cert. denied, 479 U.S. 987 (1986). Where, as here, the party opposing removal does not apply for interlocutory review of the denial of remand, the reviewing court's inquiry is confined to whether the district court would have had original jurisdiction at the time of final judgment. Grubbs v. General Electric Credit Corp., 405 U.S. 699, 702 (1972); Sorosky v. Burroughs Corp., 826 F.2d 794, 798 (9th Cir. 1987). We conclude that the district court properly asserted jurisdiction over this case.
 
 
 6
 McNatt's primary argument is that the district court violated his right to due process in concluding that ERISA preemption supplies a basis for federal jurisdiction. As McNatt points out, this court originally remanded to permit additional discovery on the question of diversity jurisdiction. However, the district court ultimately denied McNatt's motion to remand based not on diversity but on ERISA preemption. According to McNatt, the district court's determination that ERISA preemption applied-- a determination made three years after he filed his complaint-was fundamentally unfair.
 
 
 7
 We are sympathetic to McNatt's distress over the delay between the date he filed suit and the date on which the district court concluded that ERISA preempted his fraudulent concealment claim. Nevertheless, we cannot say that he was denied due process. Although the district court initially erred in determining that diversity existed, there was no bar to its later considering ERISA preemption as an alternative basis for jurisdiction. The district court may properly assert federal question jurisdiction where the complaint raises claims that fall within ERISA's broad preemptive scope. See Felton v. Unisource Corp., 940 F.2d 503, 506-10 (9th Cir. 1991). Here, the district court rested its jurisdictional decision on allegations contained in McNatt's complaint concerning an ERISA-covered pension plan. Furthermore, the defendants raised the defense of ERISA preemption in their answer to McNatt's complaint. Although it is unfortunate that the question of jurisdiction took so long to resolve, the district court did not deny McNatt due process.
 
 
 8
 In addition to challenging the district court's jurisdictional determination on due process grounds, McNatt argues that the district court was incorrect in concluding that ERISA preempts his fraudulent concealment claim. ERISA's preemption clause states that the statute's provisions "supersede any and all state laws insofar as they may now, or hereafter, relate to any employee benefits plan ...." 29 U.S.C. Sec. 1144(a). Count eight of McNatt's complaint alleges that Allied fraudulently concealed information in inducing him to enroll in Allied's health plan. Specifically, he alleges that Allied failed to notify him of the plan's arbitration requirement before he enrolled. There is no question that this plan is an "employee welfare benefit plan" covered by ERISA. See 29 U.S.C. Sec. 1002(1). Nor is there any question that count eight concerns the administration of Allied's health plan.
 
 
 9
 This does not, however, end the preemption inquiry. In Harris v. Provident Life and Accident Insurance Co., 26 F.3d 930 (9th Cir. 1994), we held that ERISA preemption does not extend to cases in which the plaintiff lacks standing. Only participants, beneficiaries, or fiduciaries have standing to bring suit under ERISA. 29 U.S.C. Sec. 1132(a)(2) & (3). McNatt argues that his fraudulent concealment claim is not preempted because the alleged fraud occurred prior to the point at which he became a participant. He relies on Perry v. P*I*E Nationwide, Inc., 872 F.2d 157 (6th Cir. 1989), in which the Sixth Circuit concluded that a plaintiff's state-law fraud claim was not preempted, where the misconduct underlying this claim occurred before the plaintiff became a participant. Id. Following Perry, McNatt argues that, in determining whether he is a "participant," this court should focus on his status at the time the alleged misconduct occurred. Because he was not a participant at the time Allied made its allegedly misleading representations, McNatt contends, ERISA does not preempt his claim.
 
 
 10
 McNatt's argument reflects some confusion over the ERISA standing inquiry in this circuit. In determining whether a plaintiff has standing under ERISA, this court looks not to his status at the time the alleged misconduct occurred, as McNatt suggests, but to his status at the time his action was filed. Harris, 26 F.3d at 933; Olson v. General Dynamics Corp., 960 F.2d 1418, 1422 (9th Cir. 1991). The jurisdictional inquiry thus hinges on whether McNatt was a "participant" within the meaning of ERISA at the time he filed suit in August 1989, one year after his termination.
 
 
 11
 ERISA defines the term "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees ...." 29 U.S.C. Sec. 1002(7). At the time of filing suit, McNatt was a former employee of Allied covered by Allied's health plan and eligible to continue receiving benefits. He therefore fell within the statutory definition of "participant" when the complaint was filed and, indeed, remains a participant to this date.
 
 
 12
 Because McNatt has standing under ERISA, and because his fraudulent concealment claim concerns a covered plan, ERISA preempts count eight. Although ERISA does not preempt McNatt's other claims, the preemption of count eight furnishes a basis for federal jurisdiction over that count and permits the district court to assert pendent jurisdiction over the remaining counts.
 
 III.
 
 13
 After ruling that ERISA preempted McNatt's fraudulent concealment claim, the district court concluded that McNatt had failed to raise a triable issue of fact as to whether the defendants had violated any provisions of ERISA. We agree.
 
 
 14
 The only possible claim that McNatt might have under ERISA is that Allied violated his right to notification of the plan's terms. ERISA requires plan administrators to furnish all participants with a summary plan description that can be understood by the average participant. 29 U.S.C. Sec. 1022(a)(1). This document must include, among other things, a description of the "remedies available under the plan for redress of claims which are denied in whole or in part." 29 U.S.C. Sec. 1022(b). Under 29 U.S.C. Sec. 1024(b)(1)(A), administrators must furnish each participant with a summary plan description "within 90 days after he becomes a participant."
 
 
 15
 It is undisputed that: (1) in September 1987, Allied informed its employees that a new health plan, administered by CIGNA, would be introduced on January 1, 1988; (2) informational sessions were conducted in January 1988; (3) McNatt enrolled in the plan on February 2, 1988; and (4) McNatt received a summary plan description approximately three weeks later, which informed him of the arbitration provision and other terms of the plan. According to McNatt, he received his summary plan description no later than March 1, 1988.
 
 
 16
 Whether McNatt has stated a claim under 29 U.S.C. Sec. 1024(b)(1)(A) depends on whether this date was "within 90 days after he became a participant." Although the district court's determination of the date on which McNatt became a participant does not comport with the rule set forth in a case we subsequently decided, the district court was correct in its conclusion that McNatt is without a claim. The district court assumed that McNatt became a participant on February 2, 1988, the date he enrolled in the plan. However, our recent decision in McLeod v. Oregon Lithoprint, Inc., No. 92-36928, slip. op. 1347 (9th Cir. 1994), holds that an employee need not actually enroll in an ERISA-covered plan to be considered a participant. Under McLeod, an employee becomes a participant at the point that he is eligible to apply for benefits. See id. at 1353.
 
 
 17
 The documents contained in the record show that McNatt was first eligible to apply for plan benefits on January 1, 1988--the date that the new plan was introduced. Under McLeod, it was on that date that McNatt became a "participant" within the meaning of ERISA. McNatt received his plan summary no later than March 1, 1988, well within 90 days of the date he became a participant. Thus, Allied did not violate ERISA's 90-day notification requirement.
 
 IV.
 
 18
 McNatt's remaining state-law claims do not concern Allied's health plan and, consequently, are not preempted by ERISA. These claims relate either to the circumstances surrounding McNatt's discharge or to the denial of commissions allegedly owed to McNatt. We consider each group of claims separately.
 
 
 19
 A. Claims Arising from McNatt's Termination
 
 
 20
 Count one (breach of condition to discharge only for cause), count three (breach of covenant of good faith and fair dealing), and count six (breach of contract for permanent employment) concern the circumstances surrounding McNatt's termination. McNatt contends that Allied breached its obligation to terminate him only for cause. Allied counters that McNatt was an "at-will" employee and, consequently, that he could be terminated for any reason. Allied further argues that, even if McNatt could be terminated only for cause, McNatt's failure to sell any F20 retrofit kits constituted adequate reason to terminate him. While there is evidence that McNatt was terminable only for cause, we affirm the grant of summary judgment on these counts, since there is no question that his termination was for cause.
 
 
 21
 Garrett's employee manual, which McNatt received upon accepting employment, specifically noted that careless or ineffective job performance was good cause for termination. Although McNatt asserts that he sold more aircraft than any other salesman between 1976 and 1986, the record leaves no question that his performance during the final two years of his employment was unacceptable. During this period, McNatt was one of three salesmen assigned responsibility for selling F20 retrofit kits. McNatt's sales area included the southern part of the United States and Mexico. Another salesman was assigned to the northern United States and Canada, while the third was assigned to Europe. In 1987, the two other salesmen assigned to the F20 retrofit program sold at least 19 retrofit kits while McNatt sold none.
 
 
 22
 Despite several documented warnings from Allied's management, McNatt persistently failed to meet sales objectives for the F20 program--sales objectives that were based, at least in part, on McNatt's own estimation of his prospects. According to McNatt, his supervisors set him up to fail by assigning him to a territory with poor sales prospects. McNatt's own memoranda to his supervisors belie this contention. For example, in a memorandum to Graser dated January 4, 1988, McNatt stated that three owners in his sales territory were "Positive to sign to retrofit," while eight others were "very interested" and 30 more were "interested." Although the record contains reports of McNatt's contacts with potential customers, stating that several were interested in the F20 program, no sales were completed before the date of his termination.
 
 
 23
 The evidence of record demonstrates that McNatt was fired for his failure to sell F20 retrofit kits. He has failed to produce evidence showing that the sales objectives set by his supervisors were unrealistic. See Van Komen v. Montgomery Ward & Co., 638 F. Supp. 739, 741 (C.D. Cal. 1986) (granting summary judgment in light of undisputed evidence of poor job performance). Summary judgment on the counts relating to his termination was therefore proper.
 
 B. Commission Claims
 
 24
 McNatt's complaint also contains several counts that concern his alleged entitlement to past-due commissions: breach of sales commission contract (count four); common counts (count five); negligence (count seven); fraud - misrepresentation (count nine); fraud - false promise (count ten); trespass (counts eleven and twelve); interference with contractual relations (count sixteen); and conspiracy to interfere with contractual relations (count seventeen). McNatt asserts that he is owed approximately $30,000 based on a special commission agreement for the sale of Hawker aircraft. In addition, he seeks $4,500 in commissions allegedly owed from the F20 retrofit program. While McNatt has failed to produce evidence showing that he is entitled to past-due commissions from the Hawker program, he has raised a triable issue of fact as to whether he is owed a commission from the F20 program.
 
 1. Hawker Commissions
 
 25
 As the district court noted, the claims based on an alleged oral promise are barred by the two-year statute of limitations. Calif. Code of Civil Procedure Sec. 339. Any breaches of the alleged oral agreement for the sale of Hawker aircraft occurred more than two years before August 1, 1989, the date on which McNatt filed suit.
 
 
 26
 Even with respect to the Hawker claims that are not barred by the statute of limitations, McNatt has failed to produce any evidence showing that he is entitled to recover any commissions. In August 1986, Graser wrote McNatt to confirm that McNatt would receive a $10,000 commission for the each 731 Hawker Aircraft, spec numbers 65, 66, and 67, sold within 30 days of the date the aircraft was ready for sale. McNatt sold a spec number 66 aircraft and a spec number 67 aircraft within the time limit, and received a $10,000 commission for each.
 
 
 27
 The record contains no evidence that McNatt sold any other aircraft specified in Graser's letter within 30 days of completion. Although McNatt did sell Hawker aircraft with spec numbers 57 and 64, the company denied his request, correctly pointing out that these models were not covered by the written agreement. In addition, McNatt sold a spec number 65 aircraft on April 1987; he admitted, however, that this aircraft was sold more than 30 days after completion. Thus, McNatt has not come forward with evidence that he is entitled to any unpaid commissions on Hawker aircraft.
 
 2. F20 Commissions
 
 28
 In count four, McNatt asserts that he is entitled to $4,500 in commissions from the sale of F20 retrofit kits to Occidental Chemical, Southern Natural Gas, and Dow Chemical. The record contains no evidence supporting McNatt's assertion that he is entitled to commissions from the Southern Natural Gas and Dow sales. He has, however, raised a triable issue of fact as to whether he is owed a commission for the sale of an F20 retrofit kit to Occidental Chemical.
 
 
 29
 The record contains evidence that Allied's salesmen were entitled to a $1,500 commission for each F20 retrofit kit sold. McNatt admits that he did not sell any F20 retrofit kits before August 5, 1988, the date of his termination, but asserts that he should have received credit for an order that Allied received from
 
 
 30
 Occidental that same date. In their answer to McNatt's complaint, the defendants acknowledge receipt of Occidental's order for an F20 retrofit kit on August 5, 1988.
 
 
 31
 The record contains several memoranda from McNatt to Defendant Graser, tending to show that he was instrumental in making this sale. McNatt spoke with Occidental representatives numerous times during the final months of his employment and provided detailed written descriptions of these conversations to Graser. Indeed, from the documents contained in the record, it appears that McNatt was the only Allied salesman involved in the Occidental sale. In a memorandum dated July 25, 1988, a few days before his termination, McNatt estimated that the retrofit contract would be signed during the first week of August 1988.
 
 
 32
 During his deposition, McNatt admitted that aircraft are not technically considered "sold" until the final payment is made and the aircraft is delivered. We do not believe that this admission forecloses McNatt's claim to a commission from the Occidental sale. The record does not establish the precise terms of the commission agreement between Allied and McNatt. Thus, we cannot determine with certainty whether McNatt would be entitled to a commission for the sale, notwithstanding the fact that the aircraft was delivered and payment made after his termination. Even if the Occidental retrofit kit was not technically "sold" until after McNatt's termination, there appears to be a triable issue of fact as to whether McNatt was entitled to a commission.
 
 
 33
 v.
 
 
 34
 Because ERISA preempts McNatt's state-law fraudulent concealment claim, we conclude that the district court properly asserted jurisdiction over this action. The district court was also correct in concluding that McNatt has failed to raise a triable issue of fact with respect to his claim under ERISA, his claims relating to his discharge, and his claims relating to commissions from the Hawker program. However, we reverse the grant of summary judgment as to one of the claims contained in count four. We conclude that there is a genuine issue of material fact with respect to whether McNatt is entitled to a commission from the sale of an F20 retrofit kit to Occidental Chemical.
 
 
 35
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 *
 The Honorable Monroe G. McKay, Senior Circuit Judge for the Tenth Circuit, sitting by designation