976 F.2d 293
 Richard L. FISHER, Jr., Plaintiff-Appellant,
v.
COMBUSTION ENGINEERING, INC.; Retirement Plan of Salaried
Employees of Combustion Engineering, Inc., and Thomas P.
Troy, as Plan Administrator of Retirement Plan of Salaried
Employees of Combustion Engineering, Inc., Defendants-Appellees.
 No. 91-6446.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 18, 1992.
Decided Sept. 29, 1992.
 
 Anita B. Hardeman (argued and briefed), Harry F. Burnette, Michael S. Pineda, Brown, Dobson, Burnette & Kesler, Chattanooga, Tenn., for plaintiff-appellant.
 Ronald G. Ingham, Robert Divine (argued and briefed), Miller & Martin, Chattanooga, Tenn., for defendants-appellees.
 Before: MERRITT, Chief Judge; KEITH and RYAN, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 In this ERISA case, the plaintiff, Richard Fisher, appeals the district court's summary judgment dismissing his claim for pension benefits allegedly owed him by the Retirement Plan of his former employer, Combustion Engineering, Inc. The court held that the denial of benefits by retirement plan administrators was not arbitrary or capricious. Fisher also appeals the dismissal of his state law breach of contract and estoppel claims against Combustion Engineering. The court ruled that these state law claims are preempted by ERISA. We affirm.
 
 I.
 
 2
 This case involves an employee who left his employer for another company when his division was sold by his employer to that company. Upon leaving, the employee waived his retirement benefits accrued under the employer. The employee subsequently went back to work for his original employer, apparently with the false expectation that he would receive pension credit dating back to his initial employment. The resulting dispute centers around the start date used by the employer to calculate the employee's pension. The details are set out below.
 
 
 3
 Richard Fisher was first hired by Combustion Engineering in May 1958, and eventually came to work in that company's Soil Pipe Division. In November 1961, Combustion Engineering sold its Soil Pipe Division to U.S. Pipe and Foundry Company. The sale agreement provided that Combustion Engineering would not hire back any salaried employees from the Soil Pipe Division for at least two years. Fisher thus became an employee of U.S. Pipe's Soil Pipe Division.
 
 
 4
 At Combustion Engineering, Fisher was a participant in the company's Retirement Plan for Salaried Employees. In connection with the sale of the Soil Pipe Division, Fisher signed a document entitled "Waiver of Benefits of the Retirement Plan for Salaried Employees of Combustion Engineering, Inc." The document provided that Fisher understood that his employment with Combustion Engineering would be terminated, and that he would become an employee of U.S. Pipe and Foundry Company.
 
 
 5
 The document also gave Fisher two options for handling the retirement benefits already accrued under Combustion Engineering's plan. Fisher could either (1) transfer his interest under the plan to U.S. Pipe's plan and waive "any and all benefits" under Combustion Engineering's plan (whereby he would receive full credit in the U.S. Pipe plan for prior service with Combustion Engineering), or (2) receive any benefits to which he was entitled as a terminated employee of Combustion Engineering's plan and be regarded as a new hire for purposes of U.S. Pipe's plan. There was no option to remain a participant in Combustion Engineering's plan. The document released Combustion Engineering and the plan's trustee from any obligation under the company's plan. Fisher selected the first option.
 
 
 6
 Fisher returned to Combustion Engineering in February 1964, after the two-year moratorium on hiring employees in the Soil Pipe Division expired. Fisher contends that he accepted Combustion Engineering's offer of reemployment on the condition that the company calculate his pension benefits as if he had worked there continuously since 1958. In the company's jargon, Fisher allegedly insisted upon a 1958 "service date." Fisher asserts that Ben Gibbs, a personnel manager at Combustion Engineering, responded to Fisher's demand by saying, "We can work that out." Fisher claims to have relied upon Gibbs' oral promise in choosing to return to the company in 1964. Mr. Gibbs died in 1976.
 
 
 7
 In October 1985 Fisher took early retirement under Combustion Engineering's "Voluntary Separation Incentive Program." Under that program, an incentive bonus was provided based upon credited years of service under the pension plan. When Fisher's retirement benefits were calculated, he received 21 years of credited service dating back to 1964. Fisher claims he took early retirement in reliance on the expectation that he would receive 27 years of service credit dating back to 1958. If the time between 1958 and 1964 were factored into Fisher's benefits calculation, his retirement benefits, as well as his early retirement incentive bonus, would increase significantly.
 
 
 8
 Fisher timely pursued his internal plan remedies under ERISA, asking the company's retirement plan administrators for pension credit dating back to 1958. The administrators denied his claim. The administrators based their denial on the fact that Fisher was "terminated" by Combustion Engineering in 1961, as indicated by the Waiver of Benefits form which Fisher signed when he became an employee of U.S. Pipe.
 
 
 9
 Fisher then brought suit against Combustion Engineering and its Retirement Plan of Salaried Employees in the Chancery Court of Hamilton County, Tennessee. The defendants removed the action to the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1441. Fisher claimed that the plan administrator's denial of benefits was arbitrary and capricious, in violation of the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq. Further, Fisher asserted that the plan administrators breached their fiduciary obligations to him, a plan beneficiary, and instead acted in the interest of the company. Fisher also raised contract and estoppel claims, arguing that the company must be held to its alleged promise to award him a 1958 service date for pension purposes. The District Court granted summary judgment for the defendants on both the ERISA and state law claims. Fisher filed a timely appeal.
 
 II.
 A. ERISA CLAIMS
 
 10
 In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." The district court found, and the plaintiff concedes, that Combustion Engineering's plan confers upon the plan administrators discretionary authority to determine eligibility and deny benefits. Consequently, we look to see whether the plan administrators acted arbitrarily, capriciously or in bad faith. Bruch, 489 U.S. at 111, 109 S.Ct. at 954.
 
 
 11
 The plaintiff contends that even under this deferential standard of review the decision of the plan administrators should be overturned. He argues that the administrators gave his claim only cursory review and "rubber stamped" the denial on appeal. In support of this argument, Fisher points to a 1973 memo from Thomas Troy, then Director of Employee Benefits at Combustion Engineering. In the memo, Troy interpreted Fisher's stint at U.S. Pipe as a "layoff." The memo went on to note that this layoff constituted a break in service under the company's retirement plan.[1] By contrast, David Arnold, the plan administrator who first reviewed Fisher's benefits claim in 1987, determined that Fisher was "terminated" in 1961 (as opposed to having been laid off) because Fisher had signed the Waiver of Benefits form. That document stated in relevant part:
 
 
 12
 I understand that the business and assets of the Soil Pipe Division of Combustion Engineering, Inc. ... are to be transferred to U.S. Pipe and Foundry Company, that my employment with Combustion Engineering will be terminated, and that I will become an employee of [U.S. Pipe] as of November 30, 1961....
 
 
 13
 Option No. 1 [Chosen by Fisher] ... In consideration of my becoming a participant in the revised retirement annuity plan ... of U.S. Pipe ... I hereby waive any and all benefits to which I may be entitled under the plan of Combustion Engineering....
 
 
 14
 (emphasis added).
 
 
 15
 Fisher points to the different terms ("termination" versus "layoff") used by different plan administrators in different years to argue that Arnold gave his claim only cursory review. He compounds this charge by noting that when deposed Arnold acknowledged that Fisher could be labeled a former "layoff." This vacillation in terminology, argues Fisher, prevents him from knowing the true basis for the denial of his claim and underscores the arbitrary and capricious nature of the administrators' actions.
 
 
 16
 Like the district court, we discern no arbitrary or capricious actions and no bad faith by the plan administrators. Fisher's employment history did not fit neatly within the language of the company's retirement plan. Nevertheless, it is clear that Fisher executed the 1961 waiver, which clearly stated that his employment with the company would be "terminated." Further, he waived "any and all benefits" under the company's pension plan. Though Arnold may have characterized Fisher as a "layoff" when deposed, his ruling that Fisher was terminated is supported by substantial evidence. Accordingly, we affirm the judgment of the district court that the plan administrators did not act arbitrarily or capriciously in denying Fisher additional pension benefits.
 
 B. CONTRACT AND ESTOPPEL CLAIMS
 
 17
 The record reflects that after being rehired in 1964, Fisher was treated as if he had been working at Combustion Engineering since 1958 for purposes of company awards recognizing employee service. Specifically, Fisher received 10, 15, 20, and 25 year "service pins" from the company based on a start date of 1958. Upon Fisher's retirement in 1985, Combustion Engineering recognized his "27 years" of service with the company.
 
 
 18
 In the district court, the plaintiff pointed to the service pins and Ben Gibbs' alleged oral assurance of requested service credit in order to advance contract and estoppel claims. He argued that the company must be held to its alleged promise concerning his service date, and that it should be estopped from denying such credit where it invited his reliance on a 1958 service date for "all other purposes."
 
 
 19
 ERISA preempts state law and state law claims that "relate to" any employee benefit plan as that term is defined therein. 29 U.S.C. § 1144(a). See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). An exception to this ERISA preemption provision appears in § 1144(b). That subsection provides that ERISA preemption "shall not apply with respect to any cause of action which arose, or any act or omission which occurred before January 1, 1975." 29 U.S.C. § 1144(b)(1).
 
 
 20
 Fisher argued below that ERISA did not preempt his contract and estoppel claims because Combustion Engineering's alleged promises and deceptions occurred before January 1, 1975.[2] The district court, however, observed that even were Fisher able to avoid ERISA preemption "the Tennessee six-year statute of limitations on contract claims ran well before the commencement of this suit...." The court then went on to state that in any event, Fisher's contract and estoppel claims "relate to" the company's ERISA plan, and therefore are preempted under § 1144(a).
 
 
 21
 On appeal, Fisher argues that although the acts or omissions giving rise to his state law claims occurred prior to 1975, his state law causes of action should not be time-barred because they did not accrue until his benefits claims was denied in 1985. We need not reach this issue, for we agree with the district court that Fisher's state law claims are preempted by ERISA because they "relate to" the company's ERISA plan.
 
 
 22
 "[T]he express pre-emption provisions of ERISA are deliberately expansive." Pilot Life Ins. Co., 481 U.S. at 45-46, 107 S.Ct. at 1552. "The phrase 'relate to' is given broad meaning such that a state law cause of action is preempted if 'it has connection with or reference to that plan.' " Cromwell v. Equicor-Equitable HCE Corp., 944 F.2d 1272, 1275 (6th Cir.1991) (quoting Metropolitan Life Ins. Co. v. Mass., 471 U.S. 724, 730, 732-33, 105 S.Ct. 2380, 2384, 2385, 85 L.Ed.2d 728) (emphasis added). See also Authier v. Ginsberg, 757 F.2d 796, 800 (6th Cir.), cert. denied, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985) ("Congress used 'relate to' in its broadest sense.").
 
 
 23
 In light of the breadth of § 1144(a), we hold that Fisher's contract and estoppel claims are preempted under ERISA. This case is unlike that of Perry v. P*I*E Nationwide Inc., 872 F.2d 157 (6th Cir.), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990), which the plaintiff cites in support of his non-preemption position. In Perry, employees claimed that their company wrongfully induced them to participate in an employee stock investment plan which was expressly subject to ERISA. They sued for rescission and restitution of the wage reduction implemented by the plan. In defense, the company argued that plaintiffs' claim was preempted by ERISA. The Sixth Circuit rejected the company's argument. Citing Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), the court stated that "preemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted." 872 F.2d at 162. Because Congress did not provide for the rescissionary or restitutive remedies sought in Perry, the court held that there was no ERISA preemption for the plaintiffs' state common-law claims of fraud, misrepresentation and promissory estoppel.
 
 
 24
 The unique remedies sought in Perry are not present here. Unlike the plaintiffs' claim in Perry, Fisher's claims, "in essence ... [are] for the recovery of an ERISA plan benefit." Cromwell, 944 F.2d at 1276. Thus, ERISA preempts Fisher's state law claims.
 
 III.
 
 25
 For the foregoing reasons, we AFFIRM the judgment of the district court dismissing the plaintiff's action in its entirety.[3]
 
 
 26
 RYAN, Circuit Judge, dissenting.
 
 
 27
 The majority leaves to one side the issue of whether the district court had subject matter jurisdiction over Fisher's claims. Because I believe that the court is obliged to determine its jurisdiction and because I conclude that the court lacks jurisdiction over Fisher's claims, I respectfully dissent.
 
 
 28
 Although neither party addressed the jurisdictional issue in their briefs on appeal, the matter was raised at oral argument. Moreover, because federal courts have limited jurisdiction,
 
 
 29
 every federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a case under review," even though the parties are prepared to concede it. "And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit."
 
 
 30
 Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (citations omitted). Because the district court lacked jurisdiction, the majority errs by reaching the merits of Fisher's claims.
 
 
 31
 Fisher originally filed his suit in a Tennessee state court. Combustion Engineering removed the suit to federal court, asserting jurisdiction under ERISA and on the basis of diversity of citizenship. Because the record does not support either of these bases of federal jurisdiction, I would vacate the judgment of the district court and remand the case with instructions to the district court to dismiss the action for want of jurisdiction.
 
 
 32
 The majority opinion concludes broadly that "Fisher's state law claims are preempted by ERISA because they 'relate to' the company's ERISA plan." Maj. op. at 297. This conclusion is based upon the Supreme Court's observation that "the express pre-emption provisions of ERISA are deliberately expansive...." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). ERISA preempts, with certain specified exceptions, "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). As the majority opinion notes, the expansiveness of ERISA preemption stems from the broad meaning that has been given to the phrase "relate to," which has been construed so that a state law cause of action is preempted if " 'it has connection with or reference to' " an ERISA plan. Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1275 (6th Cir.1991) (citations omitted), cert. dismissed, --- U.S. ----, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).
 
 
 33
 The breadth of ERISA, however, is topical, not temporal. Although ERISA preemption applies to any state law cause of action relating to a pension plan, its temporal dimensions are expressly limited:
 
 
 34
 This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.
 
 
 35
 29 U.S.C. § 1144(b)(1).
 
 
 36
 Courts that have construed this section have read these two clauses disjunctively, thus creating two separate inquiries: 1) when did the cause of action arise; and 2) when did the relevant act or omission occur. See, e.g., Rodriguez v. MEBA Pension Trust, 872 F.2d 69 (4th Cir.), cert. denied, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989). The first issue is resolved easily because courts have held uniformly that "[a]n ERISA cause of action does not accrue until a claim of benefits has been made and formally denied." Id. at 72 (citing cases from four other circuits).
 
 
 37
 The second inquiry is more difficult--what conduct amounts to an "act or omission" so that ERISA does not apply to claims related to that conduct. Stated differently, does ERISA apply where a plaintiff's claim for pension benefits is made and denied after ERISA's effective date, but the act or omission on which that denial is based occurred before ERISA's effective date? Although this court has not addressed the issue, other circuits have addressed it and have reached different results. Three circuits, the Third, the Fourth, and the Fifth, have held that a pension plan trustee's ultimate denial of a claim for benefits is the relevant act or omission and ERISA therefore applies as long as the denial occurred post-ERISA, even if the denial was the inevitable result of an act that occurred pre-ERISA. Id.; Degan v. Ford Motor Co., 869 F.2d 889, 894 (5th Cir.1989); Tanzillo v. Local 617, Int'l Bhd. of Teamsters, 769 F.2d 140, 144 (3d Cir.1985); Woodfork v. Marine Cooks & Steward Union, 642 F.2d 966, 971 (5th Cir.1981). Three other circuits, the First, the Second, and the Ninth, have held that ERISA does not apply where a post-ERISA denial of benefits is the inevitable result of a pre-ERISA act or omission. LaMontagne v. United Wire, Metal & Mach. Pension Fund, 869 F.2d 153, 156-57 (2d Cir.), cert. denied, 493 U.S. 818, 110 S.Ct. 72, 107 L.Ed.2d 39 (1989); Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1501 (9th Cir.1984); Quinn v. Country Club Soda Co., 639 F.2d 838, 841 (1st Cir.1981).
 
 
 38
 I agree with these latter courts. The relevant statutory language provides that ERISA preemption does "not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1) (emphasis added). The word "or" is generally understood in the disjunctive sense. Thus, under this section, ERISA does not preempt state law when either one of two circumstances obtain--when the cause of action arose before January 1, 1975, or when any act or omission occurred before that date. To interpret the "act or omission" language as covering the same circumstances as the "cause of action" language would render the former superfluous.
 
 
 39
 Although the ERISA preemption provisions are not addressed specifically to the scope of jurisdiction granted to federal courts, they indicate the legislative intent with respect to this issue. ERISA provides that a plan participant or beneficiary may bring a civil action to recover benefits under the terms of a pension plan and that federal district courts have concurrent jurisdiction over such claims with state courts of competent jurisdiction. 29 U.S.C. §§ 1132(a)(1)(B) and (e). Under section 1144, however, ERISA does not apply to "any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). Where the substantive provisions of ERISA do not apply, there is no reason to provide a federal forum. I agree with the Ninth Circuit's reasoning in Menhorn that "[s]ections 1132 and 1144 read together reflect no congressional intent to burden the federal courts with a new class of actions having nothing to do with federal law." 738 F.2d at 1503. Thus, I would find that where the substantive provisions of ERISA do not apply to the plaintiff's claims, there is no federal jurisdiction under ERISA.
 
 
 40
 In this case, Combustion Engineering ultimately denied Fisher's claim for benefits based on the 1958 service date in 1985, when Fisher retired and long after the effective date of ERISA. Fisher's cause of action thus arose after ERISA's effective date. Combustion Engineering's denial of Fisher's claim was based, however, on an act that occurred long before January 1, 1975. When Fisher's employment with Combustion Engineering was terminated in 1961, he signed a waiver indicating that he elected to have his interest under Combustion Engineering's pension plan transferred to U.S. Pipe and that he waived "any and all benefits" under the CE plan.
 
 
 41
 The denial of Fisher's claim for benefits based on a 1958 start date was the inevitable consequence of the termination of Fisher's employment in 1961. As a result, ERISA does not apply to Fisher's claims, and the district court did not have jurisdiction over those claims under ERISA.
 
 
 42
 In its petition to remove, Combustion Engineering also asserted diversity of citizenship as a basis for jurisdiction. The record, however, does not support this basis of jurisdiction either. In its removal petition, Combustion Engineering conceded that its principal place of business is in Tennessee. For purposes of determining diversity of citizenship, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). Fisher is also a citizen of Tennessee. The parties to this dispute are therefore not of diverse citizenship, and the district court lacked diversity jurisdiction over Fisher's claim. 28 U.S.C. § 1332(a)(1).
 
 
 43
 Because the record reveals that the district court lacked jurisdiction over Fisher's claims, I would vacate the district court's judgment and remand with instructions that the district court dismiss the case for lack of jurisdiction.
 
 
 
 [1]
 Under Combustion Engineering's retirement plan, an employee's pension benefits are calculated in part upon the number of years of continuous service the employee rendered. Under the retirement plan in effect at Combustion Engineering when Fisher became an employee of U.S. Pipe, a layoff from Combustion Engineering would not constitute a break in continuous service were the employee rehired by the company within two years. In June 1964, four months after Fisher returned to Combustion Engineering, this provision was changed to provide that continuous service would not be broken by a period of layoff of two years up to the employee's period of service before layoff, but not to exceed a maximum of five years. Because Fisher left and returned to Combustion Engineering prior to June 1964, he was deemed subject to the earlier two-year continuous service provision, not the 1964 revision
 
 
 [2]
 We leave to one side the jurisdictional issue raised at oral argument--whether the plaintiff is precluded from even advancing an ERISA claim insofar as the relevant "acts or omissions" by Combustion Engineering may have occurred prior to 1975. See 28 U.S.C. § 1144(b)(1)
 
 
 [3]
 The parties to this case have neither raised, briefed nor in any other way assisted the court on the issue discussed in our brother Ryan's dissenting opinion. We agree with his general statement of the nature of the inquiry when he says:
 What conduct amounts to an 'act or omission' so that ERISA does not apply to claims related to that conduct. Stated differently, does ERISA apply where a plaintiff's claim for pension benefits is made and denied after ERISA's effective date, but the act or omission on which that denial is based occurred before ERISA's effective date?
 This question does not go to subject matter jurisdiction. It goes to the nature and scope of the ERISA cause of action. It is a question of what claims and what conduct Congress intended to include within the ERISA cause of action. Thus, it appears to us, it is not a question of subject matter jurisdiction because we clearly have jurisdiction over the general subject matter of ERISA claims. The only question here concerns the definition of the cause of action in question. We do not address that question concerning the scope of the cause of action because the parties have not addressed it.