Lee NESTER, et al., Plaintiffs,

v.

ALLEGIANCE HEALTHCARE
CORPORATION,
Defendant.

No. C–3–99–193.

United States District Court,
S.D. Ohio,
Western Division.

April 18, 2001.

Paul C. Morrison, Morrison & Laino, Cleveland, OH, Charles D. Hubler, Eaton, OH, for plaintiffs.

Randall Scott Rabe, Elizabeth A. McNellie, Georgeann G. Peters, Brian T. Johnson, Rodger L. Eckelberry, Baker & Hostetler, Columbus, OH, for defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 22), WHICH HAS BEEN TREATED AS MOTION FOR JUDGMENT ON MERITS; PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DOC. # 28) OVERRULED, AS MOOT; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, Chief Judge.

This litigation stems from a dispute over the obligation of Defendant Allegiance Healthcare Corporation ("Allegiance") to provide the Plaintiffs with certain "transition benefits." The Plaintiffs allege that they were enticed to terminate their employment with Baxter International, Inc. ("Baxter"), and to join Allegiance in exchange for those benefits. They commenced this action in state court, asserting a breach of contract claim against Allegiance, based on their failure to receive the benefits. (Complaint, attached to Doc. # 1). Allegiance subsequently removed the action to this judicial forum on the basis of diversity jurisdiction and complete preemption under the Employee Retirement Income Security Act ("ERISA"). (*Id.*). In a March 6, 2000, Decision and Entry (Doc. # 18), the Court overruled the Plaintiffs' Motion to Remand this action to the Court of Common Pleas of Preble County, Ohio.[1] Now pending before the Court is a Motion for Summary Judgment (Doc. # 22) filed by Allegiance and a Motion for Class Certification (Doc. # 28) filed by the Plaintiffs.

## I. *Factual Background*

The facts underlying this litigation are largely undisputed. In 1996, the Plaintiffs worked for Baxter, and they were enrolled in Baxter's "defined benefit" plan.[2] Sometime that year, Baxter "spun off" a part of its operations, creating Allegiance. The Plaintiffs contend that Allegiance promised them "transition benefits" in exchange for their leaving Baxter and joining Allegiance. According to the Plaintiffs, Allegiance made this promise in "Transition Update bulletins" and in a slide-show pre-

---

1. In its March 6, 2000, ruling, the Court found prima facie evidence of diversity of citizenship, but did not decide whether the Plaintiffs' breach of contract claim was completely preempted by ERISA.

2. The Plaintiffs are three former employees of Baxter. Although they purport to represent a class of 55 former employees, the Court has not yet certified this litigation as a class action.

sentation. (Doc. # 24 at Exh. A–E). In reliance on the promise of transition benefits, the Plaintiffs left Baxter and joined Allegiance. (*Id.* at Exh. C–E).

Allegiance subsequently implemented a written employee welfare benefit plan. In accordance with the plan documents, Allegiance agreed to make annual contributions into accounts for employees who were entitled to receive "transition benefits," because they transferred directly from Baxter to Allegiance. (Doc. # 22 at Exh. A–1 at 12, A–8 at 2–3). The plan documents obligated Allegiance to make the contributions for eight years. In order to receive a contribution for any given year, however, a plan participant was required to be employed by Allegiance on the last day of that "Plan Year." (*Id.* A–8 at 2–3).

In 1998, Allegiance sold the facility where the Plaintiffs worked. As a result, their employment with Allegiance terminated, and they became employees of Maxxim Medical Corporation ("Maxxim"). After the Plaintiffs began working for Maxxim, Allegiance quit making transition contributions on their behalf, because they no longer were employed by Allegiance on the last day of the applicable "Plan Year." In response, the Plaintiffs commenced the present litigation, alleging that Allegiance still has an obligation to make transition contributions on their behalf.

## II. *Analysis*

■ The Plaintiffs contend that Allegiance breached a contract with them by failing to make transition contributions on

their behalf for eight years. According to the Plaintiffs, Allegiance induced them to leave Baxter by promising transition benefits, but then failed to guarantee that they would receive those payments. Given that the express terms of Allegiance's written employee welfare benefit plan preclude the Plaintiffs from obtaining the benefits that they now seek (because they were not employed by Allegiance following the 1998 sale to Maxxim), the Plaintiffs insist that they are not claiming benefits under the written plan. Rather, their breach of contract action involves a promise of transition benefits that Allegiance made in 1996, *prior to* its implementation of a formal written plan, in order to induce them to leave Baxter. (Doc. # 24 at 2–9).

In support of its Motion for Summary Judgment, Allegiance first argues that the Plaintiffs' contract claim is completely preempted by ERISA and that their cause of action is really a claim for ERISA plan benefits. (Doc. # 22 at 5–7). Allegiance then argues that the terms of its written benefit plan preclude the Plaintiffs from receiving any additional transition contributions.[3] (*Id.* at 8–9). As a result, Allegiance contends that it is entitled to judgment as a matter of law.

Upon review, the Court agrees that the Plaintiffs' breach of contract claim is, in reality, a claim for ERISA plan benefits. In their Complaint (Doc. # 1) and Memorandum (Doc. # 24), the Plaintiffs contend that they joined Allegiance based on certain representations that they would be entitled to transition benefits.[4] Although

3. Alternatively, Allegiance argues that if the Plaintiffs' claim is governed by Ohio contract law, it is barred by the statute of frauds. (Doc. # 22 at 9–10). Based on the reasoning and citation of authority set forth more fully, *infra,* the Court concludes that the Plaintiffs' claim is governed by ERISA. Consequently,

the Court need not address this alternative argument.

4. The Plaintiffs imply in their Memorandum that they relied on a specific promise that they would receive the transition benefits for eight years. After reviewing the affidavits and other evidentiary materials attached to

these representations pre-date Allegiance's adoption of a written ERISA plan,[5] the Court harbors no doubt that the Plaintiffs' breach of contract claim constitutes a claim for ERISA plan benefits.[6] Such a conclusion is well supported by case law from the Sixth Circuit and other jurisdictions.

In *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133 (6th Cir.1993), for example, the Sixth Circuit rejected an argument similar to the one advanced by the Plaintiffs herein. In *Gordon*, the plaintiffs alleged that, prior to 1988, their employer had an informal policy of providing certain severance pay benefits. In 1988, however, the employer adopted a formal written ERISA plan governing severance pay. *Id.* at 136. The plaintiffs filed suit for breach of contract in 1991, alleging that they were entitled to severance pay under the pre–1988 policy. Upon review, the Sixth Circuit concluded that the pre 1988 policy constituted an informal ERISA plan, and that the plaintiffs' breach of contract action was really a claim for ERISA plan benefits.

*Id.* at 136–137. The *Gordon* court also held that the plaintiffs' employer retained the right to modify its pre–1988 policy at any time, because the record contained no evidence to suggest that the plaintiffs had a vested right to receive severance pay under the terms of the informal policy. *Id.* at 136. Alternatively, the Sixth Circuit concluded that, even if the pre–1988 policy did not qualify as an ERISA plan, the terms of the employer's subsequent 1988 written ERISA plan trumped all prior representations regarding severance pay. *Id.* at 137.

Likewise, in *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir.1992), the Seventh Circuit held, in a factually similar case, that an employee's breach of contract action based on his failure to receive pension credit for certain years of service was, in reality, a claim for ERISA plan benefits. The plaintiff in *Bartholet* worked for COSA Corporation until 1981. At that time, the defendant enticed the plaintiff to work for it by promising to count the

their Memorandum, however, the Court finds *no evidence* of any such promise. The "Transition Update bulletins" and slide-show materials upon which the Plaintiffs rely *did not* provide them with a vested right to receive transition contributions for any specific period of time or otherwise indicate that Allegiance could not terminate the contributions. (*See* Doc. # 24 at Exh. A–B). Likewise, the affidavits of Plaintiffs Lee Nester, Tom Sowders and Don Schneider *do not* state that Allegiance promised them transition contributions for any specific length of time. The three Plaintiffs aver only (1) that they were promised "continuity" of "transition benefits," and (2) that they were promised "continuous transition payments from Allegiance." (*Id.* at Exh. C–E). In short, the record is devoid of evidence that Allegiance ever entered into any agreement, whether oral or written, wherein it contracted away its right to terminate the Plaintiffs' transition benefits. *Cf. Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 136 (6th Cir.1993) (recognizing that employers have the right to modify or to termi-

nate employee welfare benefits, absent evidence that those benefits have vested through a private agreement between the parties).

5. The Plaintiffs do not dispute that Allegiance's formal written plan is an "employee welfare benefit plan," within the meaning of ERISA. Their argument is that they are not seeking benefits under that plan.

6. In opposition to this conclusion, the Plaintiffs properly note that ERISA does not preempt *all* contract claims against employee welfare benefit plans. However, the Plaintiffs rely on case law dealing with contract claims brought by third-party creditors rather than case law dealing with contract claims brought by ERISA plan participants. (*See* Doc. # 24 at 5). The question in the present case is not whether ERISA preempts a state-law breach of contract claim brought against Allegiance by a commercial creditor. Consequently, the case law relied on by the Plaintiffs is easily distinguishable.

plaintiff's years of service at COSA as years of service with the defendant for pension purposes. *Id.* at 1076. Thereafter, in 1985, the defendant adopted a formal written ERISA plan that did not provide the plaintiff with the promised credit for his years of service with COSA. *Id.* As a result, the Plaintiff filed suit in state court for breach of contract, seeking the additional pension payments that he would have received if his years of service with COSA had been counted. *Id.* The defendant removed the action to federal court, alleging that the plaintiff's breach of contract claim was really a federal claim for ERISA plan benefits. In response, the plaintiff sought a remand, arguing that he merely wanted to enforce the employer's 1981 contractual promise to count his years of service with COSA. According to the plaintiff, that promise was separate from the employer's 1985 written ERISA plan. *Id.*

Upon review, the Seventh Circuit rejected the plaintiff's argument, reasoning as follows:

> As [plaintiff] Bartholet sees things, [defendant] Reishauer vowed to create a pension plan with certain attributes and didn't; a court may decide whether Reishauer broke its promise without considering any of the technical requirements of ERISA or entering a judgment that would affect the pension plan's assets. His action therefore does not "relate to" a pension plan and falls outside § 514(a), Bartholet concludes. Such a characterization is possible, and some courts would approach the subject this way. We are not among them. *Lister v. Stark,* 890 F.2d 941 (7th Cir.1989), held that ERISA governs a suit seeking benefits in excess of those provided by a

pension plan. Lister alleged that his employer promised him credit for work between 1964 and 1970, despite a break in service that excluded those years under the terms of the pension plan. That claim, we held, not only "related to" the pension plan but also was barred by the prohibition on oral alterations to a plan. Bartholet points out that Lister's employer promised to modify or disregard an existing plan, while Reishauer promised to create a plan with certain features. If Bartholet had filed suit in 1984 this might have been important. Once Reishauer created the pension plan in 1985, however, a claim that the benefits are not large enough and that the personal employment contract should control is functionally the same as Lister's. In each case the pension plan specifies one benefit, and the employee says that his employer contracted to supply a greater one.

*Id.* at 1076–1077.[7]

Both *Gordon* and *Bartholet* demonstrate that the Plaintiffs' breach of contract claim in the present case is really a claim for ERISA plan benefits. This is true regardless of whether Allegiance's initial 1996 promise of transition benefits (which enticed the Plaintiffs to leave Baxter) constitutes an "ERISA plan." If, as in *Gordon,* the initial 1996 promise does constitute an informal "ERISA plan," then the present action to enforce that promise is unquestionably a claim for "ERISA plan benefits." On the other hand, if Allegiance's initial 1996 promise is a separate contractual agreement which does not itself constitute an "ERISA plan," then, as in both *Gordon* and *Bartholet,* Allegiance's subsequent development of a formal written ERISA plan trumps any state-law claim

---

7. After recognizing that ERISA preempted the plaintiff's state-law contract claim, the *Bartholet* court recognized that his claim was really one for ERISA plan benefits arising under 29 U.S.C. § 1132(a)(1)(B). *Bartholet,* 953 F.2d at 1078.

based on the informal promise, transforming the Plaintiffs' contract claim into one for ERISA plan benefits. *Gordon*, 999 F.2d at 136–137; *Bartholet*, 953 F.2d at 1076–1078. As a result, the Court agrees with Allegiance's argument that the Plaintiffs' state-law claim is completely preempted by ERISA.[8] Although the Plaintiffs have packaged their claim as one for breach of contract, it is really a claim by ERISA plan participants for ERISA plan benefits arising under 29 U.S.C. § 1132(a)(1)(B).

In light of the foregoing conclusion, the crucial issue is whether the Plaintiffs are entitled to any additional transition benefits under ERISA. In resolving this issue, the Court first must determine the appropriate standard of review. A denial of ERISA plan benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed *de novo*, unless the plan gives the administrator or fiduciary discretion to determine eligibility for benefits, in which case an "arbitrary and capricious" standard applies. *See, e.g., Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In the present case, Allegiance has neither argued that the Court should apply the more deferential "arbitrary and capricious" standard of review nor pointed to any plan language granting it discretion. Consequently, for purposes of its analysis herein, the Court will conduct a *de novo* review of Allegiance's decision to deny the Plaintiffs additional transition benefits.

In conducting its *de novo* review, the Court ordinarily may consider only the information that was available to the ERISA plan administrator when it denied the Plaintiffs' request for additional transition benefits. *See, e.g., Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1376 (6th

8. In opposition to this conclusion, the Plaintiffs contend that ERISA cannot preempt their state-law claim, because they will be left without a remedy. (Doc. # 24 at 7). In support, they cite *Fisher v. Combustion Engineering, Inc.*, 976 F.2d 293, 297 (6th Cir.1992), for the proposition that preemption does not apply when ERISA fails to provide a remedy for the wrong asserted. (*Id.*). Upon review, the Court finds the Plaintiffs' argument to be meritless. In *Fisher*, the court discussed a prior decision, *Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989), in which ERISA preemption was found not to apply. In *Perry*, the court declined to apply preemption when a plaintiff sought recission and restitution, two remedies which are unavailable under ERISA's statutory scheme. Upon review, however, the *Fisher* court found *Perry* to be distinguishable, because the plaintiff in *Fisher* (just like the Plaintiffs in the present case) sought ERISA plan benefits, a remedy that *is* available under ERISA. *Fisher*, 976 F.2d at 297. In addition, the Court notes that the Sixth Circuit expressly rejected the Plaintiffs' argument in *Massachusetts Casualty Ins. Co. v. Reynolds*, 113 F.3d 1450 (6th Cir.1997). In that case, the court reasoned as follows:

> We also reject Mr. Reynolds' argument that, according to *Perry*, ERISA does not preempt state law claims when there is no adequate remedy under ERISA. On its face, *Perry* might appear to endorse the idea that "preemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted." *Perry*, 872 F.2d at 162, citing *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384, and *cert. denied*, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). But as noted in *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 943 n. 5 (6th Cir.1995), *Perry* did not actually hold that a plaintiff could pursue a state law claim "that fell within ERISA's civil enforcement provision merely because ERISA did not provide the desired remedy."

*Id.* at 1454.

In the present case, the Plaintiffs' claim is one for ERISA plan benefits, and it does fall within the scope of 29 U.S.C. § 1132(a)(1)(B), ERISA's civil enforcement provision. The fact that the Plaintiffs might not prevail under this statutory provision does not mean that they may pursue their state-law claim, which *is* preempted by ERISA. *Id.*

Cir.1994). While the parties have not specifically identified that information, the Court notes that Allegiance's present Motion relies *solely* on ERISA plan documents and an affidavit authenticating them. (Doc. # 22 at Exh. A–C). These plan documents necessarily constitute part of the "administrative record." *See Hinze v. Ameritech Corp.,* Case No. C–3–94–527, slip op. (S.D.Ohio Aug. 11, 2000) (Rice, J.) (unpublished). For their part, the Plaintiffs rely upon (1) their own affidavits, (2) certain "Transition Update bulletins," (3) the script from a slide-show presentation, (4) a prospectus and (5) a plan document. (Doc. # 24 at Exh. A–G). Although it is unclear whether all of the foregoing materials were reviewed by Allegiance's plan administrator, the Court concludes, for the reasons set forth more fully, *infra,* that the Plaintiffs are not entitled to any additional transition benefits under ERISA, even if the foregoing materials are taken into consideration. In light of this conclusion, the Court discerns no useful purpose in requiring the Plaintiffs to clarify whether the evidence upon which they rely was available to Allegiance's plan administrator. Consequently, for purposes of its analysis herein, the Court simply will assume, arguendo, that the "administrative record" includes the evidence cited by the Plaintiffs.

▮ Finally, before reviewing the Plaintiffs' entitlement to additional transition benefits, the Court pauses briefly to consider whether summary judgment procedures are inapposite to ERISA actions seeking the recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B). The Sixth Circuit reached precisely this conclusion in *Wilkins v. Baptist Healthcare System,*

*Inc.,* 150 F.3d 609 (6th Cir.1998), holding that claims for ERISA plan benefits should not be analyzed under traditional summary judgment principles.[9] More specifically, the *Wilkins* majority concluded that "a district court should not adjudicate an ERISA action as if it were conducting a standard bench trial under [Fed.R.Civ.P.] 52." *Id.* at 618. In support, the court reasoned that "[s]uch a proceeding would inevitably lead to the introduction of testimonial and/or other evidence that the administrator had no opportunity to consider." *Id.* Given that a claim for ERISA plan benefits is not heard as a bench trial, and no additional evidence is presented, the Sixth Circuit concluded that "the concept of summary judgment is inapposite. . . ." *Id.* at 619 ("Because this court's precedents preclude an ERISA action from being heard as a regular bench trial, it makes little sense to deal with such an action by engaging in a procedure designed solely to determine 'whether there is a genuine issue for trial.' "). Instead, the proper procedure is for a district court to review the administrative record and to render a decision on the merits, determining whether the denial of ERISA benefits was proper under the terms of the plan documents (applying either a *de novo* or an "arbitrary and capricious" standard of review, as appropriate). *Id.* at 619–620.

Curiously, however, the Sixth Circuit has largely ignored *Wilkins,* and panels of that court regularly review claims brought under 29 U.S.C. § 1132(a)(1)(B) by conducting a traditional summary judgment analysis, without either citing or discussing *Wilkins. See, e.g., Williams v. International Paper Co.,* 227 F.3d 706 (6th Cir. 2000); *Hunter v. Caliber System, Inc.,* 220

---

9. In *Wilkins,* two members of the panel, Judge Gilman and Judge Ryan, agreed that summary judgment procedures should not be used by district courts when adjudicating ac-

tions brought under 29 U.S.C. § 1132(a)(1)(B). *See Wilkins,* 150 F.3d at 617–620.

F.3d 702, 709–710 (6th Cir.2000); *Maurer v. Joy Technologies, Inc.,* 212 F.3d 907 (6th Cir.2000); *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund,* 203 F.3d 926 (6th Cir.2000); *Killian v. Healthsource Provident Administrators,* 152 F.3d 514 (6th Cir.1998); *Roberts v. Southern Labor Union Pension Trust Fund,* 229 F.3d 1153, 2000 WL 1140770 (6th Cir. Aug.8, 2000) (unpublished).[10] Nevertheless, for purposes of its analysis herein, the Court will adhere to the majority decision in *Wilkins.* Accordingly, the Court will treat Allegiance's Motion for Summary Judgment as a Motion for the entry of judgment on the merits upholding the denial of additional transition benefits.

■ With the foregoing principles in mind, the Court concludes that the Plaintiffs are not entitled to any additional transition benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Once again, the Court's resolution of this issue is the same regardless of whether Allegiance's initial 1996 promise of transition benefits (which enticed the Plaintiffs to leave Baxter) constitutes an informal ERISA plan. Even if the 1996 promise of transition benefits does constitute an ERISA plan, the general rule under ERISA is that employers are free to modify or to terminate employee welfare benefits such as the transition payments at issue in the present case. *Gordon,* 999 F.2d at 136; *see also Wulf,* 26 F.3d at 1377. In other words, employees such as the Plaintiffs have no vested right under ERISA to receive those benefits, unless their employer has bargained away its right to modify or to terminate them. *Gordon,* 999 F.2d at 136 n. 2; *Wulf,* 26

F.3d at 1377. As noted above, the record is devoid of evidence that Allegiance ever promised the Plaintiffs that they were guaranteed to receive transition benefits for a full eight years. Although the Plaintiffs make such an allegation in their Memorandum (Doc. # 24 at 5), they have not presented any evidence that supports this claim. In their affidavits, the Plaintiffs aver only (1) that they were promised "continuity" of "transition benefits," and (2) that they were promised "continuous transition payments from Allegiance." (*Id.* at Exh. C–E). In support of these averments, they rely solely upon "Transition Update bulletins" and slide-show materials which do not guarantee that they will receive transition contributions for any specific period of time or otherwise indicate that Allegiance lacks the right to terminate the contributions. (*Id.* at Exh. A–B). As a result, if Allegiance's 1996 promise of transition benefits constitutes an informal ERISA plan, the Court concludes, based on the evidence in the record, that Allegiance retained the right to terminate those benefits.

The foregoing result does not change if Allegiance's 1996 promise of transition benefits was a separate contractual agreement, as the Plaintiffs allege, and not part of an ERISA plan. Notably, Allegiance eventually did implement a formal written ERISA plan which included certain requirements for receiving transition benefits. As set forth above, that formal written plan trumps any prior representations that Allegiance may have made to the Plaintiffs regarding their entitlement to transition benefits.[11] *Gordon,* 999 F.2d at

---

10. This list of Sixth Circuit case law is illustrative only and far from exhaustive.

11. If the record contained evidence that Allegiance had bargained away its right to modify its 1996 promise (for example, by promising

the Plaintiffs that they would receive guaranteed transition benefits for a specific duration in exchange for leaving Baxter), then Allegiance's written ERISA plan might not trump its prior agreement to pay the benefits. Under such circumstances, Allegiance *might* be

136–137; *Bartholet,* 953 F.2d at 1076–1077. Furthermore, under the terms of the formal written ERISA plan, the Plaintiffs are not entitled to any additional benefits. As noted, *supra,* the relevant plan documents provide that a plan participant must be employed by Allegiance on the last day of a "Plan Year" in order to receive a transition contribution for that year. (Doc. # 22 at Exh. A–8 at 2–3). In the present case, the Plaintiffs are now employed by Maxxim rather than Allegiance. Consequently, they do not qualify for any additional transition benefits under the terms of Allegiance's written ERISA plan. As a result, Allegiance properly rejected the Plaintiffs' request for additional benefits.

### III. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 22), which has been treated as a Motion for the entry of judgment on the merits. The Plaintiffs' request for oral argument on the Defendant's Motion is denied, as the Court discerns no need for such argument. The Plaintiffs' Motion for Class Certification (Doc. # 28) is overruled, as moot.

Judgment will be entered in favor of the Defendant and against the Plaintiffs.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

estopped from enforcing the terms of its written ERISA plan. *See, e.g., Trustees of Michigan Laborers' Health Care Fund v. Gibbons,* 209 F.3d 587, 591 (6th Cir.2000) (recognizing that the doctrine of equitable estoppel re-mains viable in the context of ERISA). As noted, *supra,* however, the Plaintiffs have cited no evidence establishing that Allegiance ever guaranteed them transition benefits for any specific period of time.